# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
TIFFANY TAYLOR,                    *      No. 22-1918V
as parent and legal representative *
of her minor son, C.T.,            *
                                   *
             Petitioner,           *
                                   *      Special Master Christian J. Moran
v.                                 *
                                   *      Filed: November 17, 2025
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
             Respondent.           *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

<u>Glen Howard Sturtevant, Jr.</u>, Rawls Law Group, Richmond, VA, for petitioner;
<u>Sarah Christina Duncan</u>, United States Dep't of Justice, Washington, D.C., for respondent.

### PUBLISHED DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

Tiffany Taylor alleged that a rotavirus vaccine administered to her child, C.T., on January 17, 2020, caused C.T. to develop intussusception on March 14, 2020. Pet., filed Dec. 29, 2022. In the alternative, Ms. Taylor alleged that the vaccine significantly aggravated an underlying disorder, resulting in C.T. developing intussusception. Id. The case was dismissed on February 6, 2024, without an award of compensation. 2024 WL 835255.

As permitted by the Vaccine Act, Ms. Taylor seeks an award of her attorneys' fees and costs. The Secretary opposes this request on the ground that Ms. Taylor did not establish a predicate for a discretionary award of attorneys' fees and costs, namely a showing that reasonable basis supported her claim. As explained below, Ms. Taylor has not established that a reasonable basis supported her claim. Thus, her motion is denied.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

I.    **Procedural History**

According to the attorneys' timesheets, which accompany the pending motion for fees and costs as Exhibit 10[2], Ms. Taylor first communicated with the law firm representing her on July 21, 2022.  Over the next few months, people at the law firm gathered medical records and developed a chronology of events.  On December 9, 2022, a paralegal, Elizabeth Garnett, spent 0.6 hours "research[ing] intussusception table injury timeline and recent rulings."  Represented by Attorney Glen Howard Sturtevant, Jr., Ms. Taylor alleged that a rotavirus vaccine administered to C.T. caused him to develop an intussusception, or, in the alternative, significantly aggravated an underlying disorder resulting in the intussusception.  Pet., filed Dec. 29, 2022, at 1-2.  A month later, Ms. Taylor filed various medical records and affidavits.

On October 27, 2023, the undersigned issued a comprehensive scheduling order and draft expert instructions, setting the deadlines for the Secretary's Rule 4(c) Report and the parties' expert reports.  Following this order, Ms. Garnett spent 0.9 hours "research[ing] rulings in off-table intussusception vaccine injury cases."  Timesheets (entry for Nov. 14, 2023).  The next day, Ms. Garnett conducted a detailed "review [of] opinions regarding off-Table intussusception cases to determine expert used and findings" for 2.7 hours.

In November and December 2023, Mr. Sturtevant and Ms. Garnett communicated with a person whom petitioners in the Vaccine Program often retain, M. Eric Gershwin.  Dr. Gershwin has charged $5,000 as a retainer.  However, Ms. Taylor did not submit a report from Dr. Gershwin.

The Secretary recommended that the case be dismissed.  Resp't's Rep., filed pursuant to Vaccine Rule 4(c), on Jan. 18, 2024.  The Secretary argued that Ms. Taylor had not offered a reputable scientific or medical theory establishing that the rotavirus vaccine can cause intussusception 58 days after vaccination, and noted that none of C.T.'s treating physicians opined that the vaccine could or did cause the intussusception.  Resp't's Rep. at 6.  The Secretary characterized the 1–21-day onset of intussusception on the Vaccine Table as "likely overbroad" in light of the more common 1-7 day onset, and disputed that it would be medically acceptable to infer causation-in-fact from C.T.'s onset after 58 days.  Given this delayed interval, the Secretary questioned whether there was reasonable basis to proceed.  Id. at 7 n.6.  The Secretary also argued that Ms. Taylor had not submitted preponderant evidence to establish any of the Loving prongs, nor identified a preexisting condition that was allegedly significantly aggravated by the vaccine.  Id. at 5-6 n.5.

Concurrently with his Rule 4(c) Report, the Secretary filed a motion to dismiss, incorporating the arguments from his Report.  On January 26, 2024, Ms. Taylor filed a status report advising that she did not anticipate finding a supportive expert.  In a status conference on February 6, 2024, Ms. Taylor confirmed that she was not able to find an expert, and asked that the motion to dismiss be decided.  The Secretary's motion to dismiss was granted and compensation was denied.  Entitlement Decision, 2024 WL 835255 (Feb. 6, 2024).

---

[2] Ms. Taylor later filed an article by Bhandari, also labeled as Exhibit 10.  ECF No. 36-1.

Presently, Ms. Taylor is seeking an award of her attorneys' fees and costs in the amount of $20,625.85.[3]  Pet'r's Mot., filed June 20, 2024.  The Secretary contests any award.  To the Secretary, the "objective evidence indicates that petitioner neither began her case with a reasonable basis, nor did one emerge as her case progressed."  Resp't's Resp., filed July 3, 2024, at 7.  Ms. Taylor counters that reasonable basis supported her claim.  Pet'r's Reply, filed Aug. 1, 2024.  With this reply, she attached two articles that had not been filed previously.

Because Ms. Taylor advanced arguments regarding reasonable basis in her reply that she could have, but did not, advance in her original motion, the Secretary was directed to respond.  Order, issued Oct. 24, 2024.  The Secretary did so, maintaining his position that the case lacked a reasonable basis.  Resp't's Supp. Br., filed Nov. 12, 2024.  Although Ms. Taylor was entitled to reply by November 26, 2024, she did not file a reply at any time.  Because the period for reply has expired without any motion for an enlargement of time, the case is ready for adjudication.

## II.     Standards for Adjudication

Petitioners who have not been awarded compensation (like Ms. Taylor here) are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim."  42 U.S.C. § 300aa-15(e)(1).  As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs.  Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).  Here, the Secretary has not raised a challenge to Ms. Taylor's good faith.  Thus, the disputed issue is reasonable basis.

In Cottingham v. Sec'y of Health & Hum. Servs., the Federal Circuit stated that the evidentiary burden for meeting the reasonable basis standard "is lower than the preponderant evidence standard."  971 F.3d 1337, 1346 (Fed. Cir. 2020).  Something "more than a mere scintilla" might establish the reasonable basis standard.  Id. at 1356.  Petitioners meet their evidentiary burden with "objective evidence."  Id. at 1344.  In categorizing medical records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation."  Id. at 1346.  Finally, the Federal Circuit in Cottingham specified that "we make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court."  Id. at 1347.

In a precedential opinion regarding the reasonable basis standard, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence that could support reasonable basis.  James-Cornelius v. Sec'y of Health & Hum. Servs., 984 F.3d 1374, 1379-81 (Fed. Cir. 2021).  The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts."  Id. at 1379 (citing Cottingham, 971 F.3d at 1346).  These two decisions guide the analysis regarding what types of evidence constitute objective

---

[3] Mr. Sturtevant stated that he was unaware of any costs incurred by petitioner, but petitioner "did not respond to requests to sign" a statement attesting to this.  Exhibit 12.

evidence of reasonable basis, as originally articulated in <u>Simmons</u>, though the ultimate weighing of such evidence is left up to the special master.

More recently, the Federal Circuit held that in assessing whether reasonable basis supports the claims set forth in a petition, a special master may structure the analysis around the <u>Althen</u> prongs. <u>Sheller v. Sec'y of Health & Hum. Servs.</u>, 121 F.4th 1301, 1305-07 (Fed. Cir. 2024). In doing so, the special master should recognize that the quantum of evidence for reasonable basis is lower than the quantum of evidence for entitlement. <u>Id.</u> The Federal Circuit also determined a favorable ruling from one special master can constitute evidence supporting a petitioner's proof regarding the first <u>Althen</u> prong. <u>Id.</u> at 1308.

## III.    Review of Parties' Arguments

As advanced in her August 1, 2024 reply brief, Ms. Taylor appears to assert the following.[4] Relying upon <u>Mead v. Sec'y of Health & Hum. Servs.</u>, 170 Fed. Cl. 435 (2024), "a reasonable basis depends on what is known at that time [referring to the time the petition is filed], not what will become known in the future." Pet'r's Reply at 2. Ms. Taylor elaborates: "The procedural posture of this claim at the initial stages is critical to the analysis." <u>Id.</u> at 4. She recounts a sequence of events:

> the only way for Petitioner to determine with certainty[5] whether the Rotavirus was the cause, is through expert medical opinion. Petitioner filed a claim, then sought that opinion. . . . Without a medical expert, Petitioner could not make this determination. Critically, once a medical expert determined that this 58-day gap was longer than could be expected if Rotavirus vaccination was the cause, Petitioner notified the Special Master and did not pursue the case further.

<u>Id.</u> at 4-5.

Next, Ms. Taylor appears to attempt to present some evidence regarding the interval for which an inference of causation is appropriate by submitting two articles. One is by Bhandari (ECF No. 36-1) and the other is by Mo (ECF No. 36-2).[6] Pet'r's Reply at 6.

---

[4] The Federal Circuit released its precedential opinion in <u>Sheller</u> on November 18, 2024. Because the October 24, 2024 order set the deadline for Ms. Taylor's sur-reply regarding reasonable basis as November 26, 2024, Ms. Taylor enjoyed an opportunity to develop arguments based upon <u>Sheller</u>. However, Ms. Taylor did not file a sur-reply to address the Secretary's challenges to reasonable basis.

[5] Ms. Taylor's use of the term "certainty" is mistaken. In the Vaccine Program, she is not entitled to prove any assertions with certainty.

[6] These articles were labeled as Exhibits 10 and 11. However, Ms. Taylor previously filed her attorneys' timesheets and cost invoices as Exhibits 10 and 11. ECF Nos. 32-1 and 32-2.

Ms. Taylor also appears to argue that she cannot be required to present any evidence regarding a theory for how a rotavirus vaccine can cause intussusception because the Secretary associates the rotavirus vaccine with intussusception. Pet'r's Reply at 7. She maintains that "the medical theory linking this vaccine injury to this vaccine is well established. Petitioner concedes that there is no new, novel medical theory presented, besides the medical theory detailed in the Vaccine Injury Table." Id.

Ms. Taylor's final point acknowledges that C.T.'s "treating medical providers did not attribute the intussusception to the rotavirus vaccine." Pet'r's Reply at 7. She states that statements from treating doctors constitute one, but not the only, source of evidence.

In contrast, the Secretary contends that Ms. Taylor's claim was not supported by reasonable basis. The Secretary argues that Ms. Taylor "has not—at any point in the proceeding—provided more than the mere scintilla of evidence required to establish reasonable basis." Resp't's Supp'l Resp. at 2. The Secretary emphasizes that the temporal relationship is not appropriate:

> the onset of C.T.'s intussusception occurred 58 days after his second rotavirus vaccination, but it is well known that the onset of intussusception after a rotavirus vaccination occurs within days, not weeks. Response at 3-4, 7-8. Accordingly, an expert report would be required given the nature of this claim, but petitioner was never able to obtain such an opinion in support of her claim. . . . Indeed, petitioner never filed new medical literature or research supporting onset of intussusception 58 days after rotavirus vaccination, nor was petitioner able to obtain a supportive expert opinion. Respondent also vehemently disagrees with petitioner's contention that 58 days is longer than the Vaccine Injury Table ("Table") timeframe of 21 days "only [] by a matter of degree." See [Pet'r's] Reply at 4. Fifty-eight days is nearly three times the 21-day onset timeframe set forth in the Table, which, as respondent explained in his Response, is already more generous than the medical literature supports.

Id. at 2-3. The Secretary further argues that neither article that Ms. Taylor added during the fees litigation supports reasonable basis. Id. at 4.

The Secretary also maintains that Ms. Taylor had failed to present any theory to connect a rotavirus vaccine with intussusception, which is her burden under the first Althen prong. In this context, the Secretary maintains that the Vaccine Injury Table's association of rotavirus vaccine with intussusception within 21 days does not assist Ms. Taylor.

## IV.    Analysis

As recognized in Sheller, a special master may structure an assessment of reasonable basis around the Althen prongs. Sheller, 121 F.4th at 1305-07. The burden of proof differs in that to prevail upon entitlement, Ms. Taylor must establish her claim with preponderant

5

evidence.  But, for reasonable basis, Ms. Taylor might prevail by presenting a scintilla of evidence.

###### A.    *Althen* Prong One

In the entitlement phase, this element requires petitioners to present "a medical theory causally connecting the vaccination and the injury." <u>Althen</u>, 418 F.3d at 1278.

Here, Ms. Taylor's argument about a theory is not a model of clarity.  She contends:

> There is a long period before onset, but the medical theory linking this vaccine injury to this vaccine is well established. Petitioner concedes that there is no new, novel medical theory presented, besides the medical theory detailed in the Vaccine Injury Table. Petitioner doubts that Respondent here is challenging the medical theory behind the Table Injury for Intussusception, but cannot be sure. The timing, not the theory, is the issue. Petitioner did not file an expert report detailing this medical theory, because Petitioner stopped seeking expert medical opinion to minimize fees once it became apparent that Petitioner's onset was not within the medically expected time period.

Pet'r's Reply at 7.  Although Ms. Taylor asserts the medical theory is "well established," she does not state what it is.  For example, is the theory molecular mimicry?  Does the theory involve cytokines?  Ms. Taylor does not say.  Ms. Taylor further states that she did not file an expert report explaining the theory, but the undersigned cannot evaluate what is not filed as evidence.

Ms. Taylor's reliance on the Vaccine Injury Table to provide a theory is misplaced. When the Secretary proposed associating vaccines containing live, oral or rhesus-based rotavirus with intussusception, the Secretary did so based upon epidemiologic studies.  66 Fed. Reg. 36735, 36735 (July 13, 2001) (notice of proposed rulemaking).  The epidemiologic studies showed statistically increased rates of intussusception in the first two weeks after vaccination. "Beyond 14 days, there did not appear to be more cases than might occur by chance alone."  <u>Id.</u> When this rule was adopted, the time on the Table was 0-30 days.  67 Fed. Reg. 48558, 48560 (July 25, 2002).  Then, in 2013, the Secretary proposed for the general category of "rotavirus vaccines" to add intussusception with "an onset interval of 1-21 days . . . since evidence shows the increased risk within the 1-7 days following immunization with peaks in the fourth and fifth days."  78 Fed. Reg. 44512-02, 44515 (July 24, 2013).  This became the final rule.  80 Fed. Reg. 35848-01, 35848 (June 23, 2015).  In this context, the Secretary noted that when the onset exceeds 21 days, "petitioners will be required to prove causation-in-fact."  <u>Id.</u> at 35849.  The lack of a theory may not be surprising because "the exact mechanism for the rotavirus to cause intussusception is unknown."  <u>Germaine v. Sec'y of Health & Hum. Servs.</u>, No. 18-800V, 2020 WL 8992815, at *2 (Fed. Cl. Spec. Mstr. Mar. 9, 2020) (citing petitioner's expert report); <u>accord</u> <u>Carda v. Sec'y of Health & Hum. Servs.</u>, No. 14-191V, 2017 WL 6887368, at *18 (Fed. Cl. Spec. Mstr. Nov. 16, 2017).

Furthermore, as the Secretary contends, petitioners who are alleging causation-in-fact may not simply just rely upon the existence of the Table injury. "'Simple similarity to conditions or time periods listed in the Table is not sufficient evidence of causation; evidence in the form of scientific studies or expert medical testimony is necessary to demonstrate causation for such a petitioner.'"  Grant v. Sec'y of Health & Hum. Servs., 956 F.2d 1144, 1148 (Fed. Cir. 1992) quoting H.R. Rep. No. 908, 99th Cong., 2d Sess., pt. 1, at 15 (1986), reprinted in 1988 U.S.C.C.A.N. 6344, 6356.  Although Grant uses the phrase "demonstrate causation," Ms. Taylor is not required to establish the reasonable basis for her claim with persuasive evidence. Nevertheless, the logic underlying Grant shows that a off-Table claim differs from an on-Table claim.  A petitioner who alleges an off-Table injury must present some causal theory to be entitled to compensation.  Here, as explained above, it is not readily apparent that Ms. Taylor presented any causal theory.

## B.    *Althen* **Prong Three**

Ms. Taylor's failure to present more than a scintilla about the medical theory by which a rotavirus vaccine can cause intussusception has consequence for her efforts with respect to the third Althen prong.  The medically acceptable timeframe depends, at least in part, on the theory being offered.  Langland v. Sec'y of Health & Hum. Servs., 109 Fed. Cl. 421, 443 (2013).

Here, without a theory proposing a way by which the rotavirus vaccine can cause intussusception, evaluating whether Ms. Taylor has presented a scintilla of evidence about the appropriate temporal relationship is difficult, if not impossible.  Nevertheless, Ms. Taylor has introduced two articles, which, she says, support her case.

In the earlier study, Nita Bhandari and other researchers investigated the efficacy of a rotavirus in India.  The did so by giving 4,532 infants the vaccine and by giving 2,267 infants a placebo.  The researchers then determined how frequently the children developed gastroenteritis for a period.  How long the researchers followed the study-participants is not entirely clear, but it appears that they followed them for one to two years.  In this context, the authors also reported about adverse events the participants experienced, such as bronchopneumonia.  Bhandari at 5, table 4.  The authors stated:

> Six (<1%) cases of intussusception were reported in the vaccine group and two (<1%) were reported in the placebo group. All events took place after administration of dose 3. The minimum interval between dosing and intussusception was 112 days in the vaccine group and 36 days in the placebo group.

Id.  Whether the authors considered these six cases of intussusception following the rotavirus vaccine to be caused by the rotavirus vaccine is questionable.  The authors stated: "One case of urticaria in the vaccine group and one each of acute gastroenteritis and suspected sepsis in the placebo group were regarded as related to the study product on the basis of temporality of occurrence."  However, they did not make a similar comment about intussusception; thus, it seems unlikely that the Bhandari authors also regarded intussusception as related to the vaccine.

In the second study, Zhaojun Mo and colleagues explored the efficacy and safety of a different rotavirus vaccine. The study was similar to Bhandari in the sense that 4,040 infants received the vaccine and 2,020 received a placebo. The researchers looked for cases of intussusception "during the entire study." Mo at 5897. The study period ran for approximately one year. Mo at 5900. Among the group of approximately 4,000 infants who received the vaccine, two developed intussusception--- one 32 days after the first dose, and the other 53 days after the second dose. Id. "Neither case was considered vaccine-related by the investigator." Id. at 5902.

The Bhandari and Mo articles mean that on the topic of timing, Ms. Taylor has something more than no evidence, but not much more. It is difficult to assign either article much value because the authors either implicitly (Bhandari) or explicitly (Mo) suggest that the cases of intussusception occurring after the vaccine were not caused by the vaccine. Thus, it seems counter to the authors' intended meaning to accept these articles as showing the time frame is one for which an inference of causation is appropriate. The relative weakness of these articles is highlighted by the omission of these articles in cases decided by special masters. If other petitioners thought that Bhandari and/or Mo would support their cases, then presumably those other petitioners would have cited them, leading to an evaluation of them in an opinion by a special master.

## C.    *Althen* Prong Two

The remaining element for a causation-in-fact case is for petitioners to present "a logical sequence of cause and effect showing that the vaccination was the reason for the injury." Althen, 418 F.3d at 1278. With respect to this prong, the Federal Circuit has instructed special masters to consider carefully the views of a treating doctor. Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1326 (Fed. Cir. 2006).

Here, Ms. Taylor recognizes that C.T.'s treating doctors "did not attribute the intussusception to the rotavirus vaccine." Pet'r's Reply at 7. But, she continues, the collection of treating doctors "is but one possible source of evidence for demonstrating that the vaccine caused the injury." Id.

Ms. Taylor appears correct that, as a matter of logic, treating doctors are just one possible source of evidence. Another potential source might be a report from an expert. 42 U.S.C. § 300aa–13(a)(1) (stating that to find entitlement to compensation, a special master may not rely upon "the claims of petitioner alone, unsubstantiated by medical records or medical opinion"). Ms. Taylor fails to identify any "medical records or medical opinion" that substantiates her claim.

Ms. Taylor proposes that she can step into this role: "Petitioner considered possible causes of her infant's serious injury, and vaccination was one of the only known causes. It would be unreasonable to not have considered that cause." Pet'r's Reply at 7. Ms. Taylor's consideration certainly goes to her good faith, which the Secretary has not challenged. Resp't's Supp'l Resp. at 6. On the other hand, in examining reasonable basis, the Federal Circuit has cautioned against crediting a petitioner's belief that a vaccine caused an injury: "lay opinions as

to causation or medical diagnosis may be properly characterized as mere 'subjective belief' when the witness is not competent to testify on those subjects." James-Cornelius, 984 F.3d at 1380.

Further, in the context of evaluating entitlement, the Court of Federal Claims has recognized that when petitioners have established neither a theory nor appropriate timing, it follows as a matter of logic that they cannot establish a logical sequence of cause and effect. See Caves v. Sec'y of Health & Hum. Servs., 100 Fed. Cl. 119, 145 (2011), aff'd without opinion, 463 F. App'x 932 (Fed. Cir. 2012); Temes v. Sec'y of Health & Hum. Servs., 151 Fed. Cl. 448, 464 (2020) ("the special master appropriately considered the lack of evidentiary support for [the petitioner's] theory of causation to analyze whether there was sufficient evidence to establish a logical sequence of a cause and effect showing that the vaccines at issue were the reason for the [the petitioner's] injury."). That reasoning also applies to an evaluation, at the lower evidentiary standard, of reasonable basis.

### D.    Summary and Additional Comments

Ms. Taylor's evidentiary showing was very weak. None of the treating doctors linked the rotavirus vaccine to C.T.'s intussusception. Although she consulted with one expert who frequently supports claims that a vaccine caused an injury, the expert did not provide a report. She did not present a theory to explain how a rotavirus vaccine can cause intussusception that develops 58 days after the vaccination. She did not cite any cases in which a special master found a latency of 58 days to be appropriate. See Kuhn v. Sec'y of Health & Hum. Servs., No. 14-656V, 2015 WL 6549179, at *5 (Fed. Cl. Spec. Mstr. Sep. 29, 2015) (finding that 40 days was not an appropriate temporal relationship). On the other hand, she did cite the Vaccine Injury Table and presented two articles that at least touch on timing.

Collectively, all this evidence might amount to a scintilla of evidence. However, a scintilla of evidence does not mandate a finding of reasonable basis. Even at this lower level of proof, special masters may decline to find reasonable basis. Cottingham v. Sec'y of Health & Hum. Servs., 159 Fed. Cl. 328, 336 (2022) (denying motion for review of decision not to award attorneys' fees and costs), aff'd without op., 2023 WL 7545047 (Fed. Cir. 2023); see also McCoy v. Sec'y of Health & Hum. Servs., No. 20-1321, 2025 WL 3084859, at *5 (Fed. Cl. Oct. 20, 2025) ("the special master retains discretion to require evidence that exceeds a mere scintilla but remains less that that required for a preponderance"). A finding that reasonable basis is lacking is appropriate here. See Chuisano v. United States, 116 Fed. Cl. 276, 286 (2014) ("Fee denials are expected to occur").

The lack of evidence distinguishes Ms. Taylor's case from a case on which she relies, Mead v. Sec'y of Health & Hum. Servs., 170 Fed. Cl. 435 (2024). Pet'r's Reply at 2. There, Mr. Mead presented a report from an expert that was sufficient to establish reasonable basis at least initially. Here, none of the material Ms. Taylor presented at the beginning of her case or by the end of her case sufficed to satisfy the reasonable basis standard.

## V.    Conclusion

To be eligible for an award of attorneys' fees and costs, an unsuccessful petitioner in the Vaccine Program must establish that the claim in the petition was supported by reasonable basis.

Although reasonable basis is a lower standard than preponderance of evidence, Ms. Taylor has failed to meet the reasonable basis standard.  Without this showing, her motion for attorneys' fees and costs is DENIED.

      The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed.  Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, which are available on the website for the Court of Federal Claims.

      **IT IS SO ORDERED**.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master